# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

CARI D. SEARCY and KIMBERLY )
McKEAND, individually and as parent )
and next friend of K.S., a minor, )
                                           )
     Plaintiffs, )
                                           )
v. )    Civil Action No. 14-00208-CG-N
                                           )
ROBERT BENTLEY, individually and )
in his official capacity as the Governor )
of the State of Alabama, et al., )
                                           )
     Defendants. )

## REPORT AND RECOMMENDATION

Two motions to dismiss are pending in this case, which challenges the constitutionality of Alabama's Marriage Protection Act and the Sanctity of Marriage Amendment to the State Constitution[1] (*see* Doc. 1, ¶ 1) (collectively, the "Marriage Sanctity Laws" or "Sanctity Laws"[2]), "as applied and interpreted in the context of Alabama's step-parent adoption statute" (*id.*, ¶ 30 (citing ALA. CODE § 26-10A-27)).

1. Defendant Nancy Buckner, Commissioner of the Alabama Department of Human Resources, sued in her individual and official capacity, has filed a motion to dismiss all claims against her pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. 14; *see also* Doc. 15, brief in support); and

2. Defendants Robert Bentley, Governor of Alabama, and Luther Strange, Attorney General of Alabama, both sued in their individual and official capacities, have filed a motion to dismiss (Doc. 17), seeking that all

---

[1] The Act is codified at Ala. Code § 30-1-19, and the Amendment, No. 774, appears at Article I, § 36.03 of the State Constitution.

[2] The undersigned adopts this description of the laws, provided in the complaint, for purposes of the report and recommendation.

claims against Governor Bentley be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) and that the individual-capacity claim against Attorney General Strange be dismissed pursuant to Rule 12(b)(6). Their motion provides further that "Attorney General Strange will defend the validity of Alabama's marriage laws in this case." (*Id.* at 8.)[3]

The motions have been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2, for entry of a report and recommendation.

As a preliminary, but important, matter, in Plaintiffs' omnibus response to the motions to dismiss (Doc. 27), filed June 24, 2014, they agree to the voluntary dismissal of all claims against Commissioner Buckner. (*See* Doc. 27 at 1.)[4] Plaintiffs further state that all individual-capacity claims against Governor Bentley and Attorney General Strange are also due to be dismissed. (*See id.*) "[T]he only remaining claims [are] against [Governor] Bentley and [Attorney General] Strange in their official capacities." (*Id.*) Accordingly, the undersigned **RECOMMENDS**, initially, that Commissioner Buckner's still-pending motion to dismiss (Doc. 14) be **GRANTED**. And the undersigned will limit her consideration to the motion filed

---

[3] Defendant Don Davis, Judge of Probate for Mobile County, Alabama, also sued in his individual and official capacity, also filed a motion to dismiss all claims against him pursuant to Rule 12(b)(6) (Doc. 10). A joint stipulation of dismissal (Doc. 29), agreeing that all claims against Judge Davis are dismissed with prejudice, was filed July 14, 2014. And Judge Granade has ordered that, unless an objection was filed by July 25, 2014 (none was filed), the claims against Judge Davis are deemed dismissed with prejudice as of that date. Accordingly, the undersigned **RECOMMENDS** that Judge Davis's motion (Doc. 10) be **DENIED as MOOT**.

[4] Plaintiffs also agreed to dismissal of all claims against Judge Davis and Catherine M. Donald, State Registrar of Vital Statistics. *See id.* Ms. Donald was served on June 5, 2014 (*see* Doc. 19). As such, her time to respond to Plaintiffs' complaint had not passed by the time Plaintiffs filed the response agreeing to voluntarily dismiss all claims against her.

2

by Governor Bentley and Attorney General Strange (Doc. 17), which is further supported by their reply (Doc. 28), filed June 27, 2014. The analysis below will be limited, moreover, to the only pre-answer issue before the Court—whether the official-capacity claim against Governor Bentley should be allowed to proceed. And, for the reasons explained below, it is **RECOMMENDED** that that the official-capacity claim against the Governor be **DISMISSED** and that this lawsuit proceed solely against the Attorney General in his official capacity.

I. <u>**Applicable Background**</u>

Plaintiffs Kimberly McKeand and Cari D. Searcy, female resident citizens of Mobile County, Alabama, were married in California in 2008. (*See* Doc. 1, ¶¶ 4, 5, 13.) Ms. McKeand is the biological mother of K.S., a minor born in Mobile, Alabama on December 30, 2005 (*see id.*, ¶¶ 16, 18), and also brings this suit on behalf of K.S.

According to the complaint, "it was decided that" K.S.'s biological father, identified as Mike, and a friend of Ms. Searcy, "would be a sperm donor and that McKeand would carry a child that would be raised by Searcy and McKeand." (*Id.*, ¶ 18; *see also id.*, ¶ 19 ("Mike was not listed as father of K.S. on the birth certificate, and Mike did not register as the father with the State of Alabama's putative father registry system. Mike did not contest the adoption, and in fact, Mike consents to the adoption [of K.S. by Ms. Searcy] and executed a waiver to that effect. Mike has waived all parental rights and he has terminated all rights as a parent of K.S.").)

Ms. Searcy petitioned to adopt K.S. on December 29, 2011. (*See id.*, ¶ 21.) Her attempt to adopt K.S. was denied by the Probate Court of Mobile County on

3

April 6, 2012, based on the determination "that Searcy is not a 'spouse' of McKeand within the meaning and context of Ala. Code § 26-10A-27" (which provides, "[a]ny person may adopt his or her spouse's child according to the provisions of this chapter . . ." subject to certain exceptions and conditions, which Plaintiffs contend "are inapplicable to this matter"). (*Id.*, ¶¶ 21, 22.) The Probate Court's decision was appealed to the Supreme Court of Alabama, which assigned the matter to the Court of Civil Appeals; that court affirmed the Probate Court. (*See id.*, ¶ 23.) Thus, Plaintiffs contend, they "have exhausted all avenues of legal recourse in Alabama state courts and left without the remedy they seek—the adoption." (*Id.*, ¶ 24.)

This challenge to the Marriage Sanctity Laws, "in the context of [ ] step-parent adoption" (*id.*, ¶ 30), appears to be—as of entry of this report and recommendation—but one of three challenges to the Marriage Sanctity Laws pending in federal courts in the State. *Hard v. Bentley, et al.*, Case No. 2:13-cv-00922-WKW-SRW, filed December 16, 2013 is pending in the Middle District, and *Aaron-Brush v. Bentley, et al.*, Civil Action No. 2:14-cv-01091-RDP, filed June 10, 2014, is pending in the Northern District.[5] Not surprisingly, of the three cases, the first filed, *Hard*, has progressed the furthest. There, Governor Bentley initially chose to answer the complaint, and the plaintiffs are currently scheduled to file a motion for summary judgment by August 29, 2014. (*See* 2:13-cv-00922 (M.D. Ala.) Docs. 18, 44.) On July 24, 2014, however, the Governor moved to dismiss the claim against him for failure to state a claim. (*See* 2:13-cv-00922 (M.D. Ala.) Doc. 48.)

---

[5] *Aaron-Brush* also raises step-parent adoption. (*See* 2:14-cv-01091 (N.D. Ala.) Doc. 1, ¶¶ 11, 30.)

4

And in *Aaron-Brush*, Governor Bentley has filed a motion to dismiss all claims against him, substantively the same as the one pending in this Court (and now in *Hard*), which appears to now be ripe for consideration by Judge Proctor. (*See* 2:14-cv-01091 (N.D. Ala.) Docs. 9, 10, 14, 15.)

## II. Legal Framework

Governor Bentley argues that pursuant to the Eleventh Amendment to the United States Constitution he cannot be subject to defend this lawsuit in his official capacity. (*See generally* Doc. 17 at 3-5 (also arguing that Plaintiffs lack standing to bring this action against Governor Bentley "for largely the same reasons these claims are barred by" Eleventh Amendment immunity").)

> Eleventh Amendment immunity affects the jurisdiction of the court, and a state sovereign is entitled to it unless one of three narrow circumstances exists: abrogation by Congress under its Fourteenth Amendment power, explicit waiver by the state sovereign, or application of the *Ex parte Young* doctrine for prospective relief against a state official (but not the State itself). In the absence of something suggesting the presence of one of these exceptions, a court must assume Eleventh Amendment immunity because it goes directly to constitutional limitations on the Article III power of the court.

*Diaz v. Glen Plaid, LLC*, No. 7:13–cv–853–TMP, 2013 WL 5603944, at *4 (N.D. Ala. Oct. 11, 2013) (citing *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1021 (11th Cir. 1994), *aff'd sub nom. Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)).

The exception at issue in this litigation is application of "the doctrine, first enunciated in *Ex Parte Young*, 209 U.S. 123 (1908), that 'the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief' against state officials 'to prevent a continuing violation of federal law' because such conduct

5

is not considered to be state action." *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 406-07 (E.D.N.Y. 2010) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Pennhurst*, 465 U.S. at 102)); *see also Walker v. Jefferson Cnty. Bd. of Educ.*, No. 2:13–CV–00524–RDP, 2013 WL 4056224, at *3 (N.D. Ala. Aug. 12, 2013) ("In certain circumstances, state officials may be subject to suit, despite the Eleventh Amendment, under the 'fiction' of *Ex parte Young*. That fiction allows an individual to obtain a federal injunction against a state officer to force the officer to comply with federal law." (citations omitted)).[6]

---

[6] Although not pressed by Plaintiffs here, any argument that the Governor's initial decision to participate in *Hard* "waived" his immunity from the defense of this lawsuit would likely not be successful. Because "[t]he inquiry into whether a state has waived its immunity[ ] is stringent." *Shedrick v. District Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1359 (S.D. Fla. 2013) (Rosenbaum, J.) (citing *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) (in turn citing *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974))). "A waiver must specifically permit suits against the state in federal court. Generally, waiver is found only when the state voluntarily invokes the jurisdiction of a federal court or the state makes a clear declaration that it intends to submit itself to federal jurisdiction." *Id.* (citations and internal quotation marks omitted). At issue in *Shedrick* was whether the community college, an arm of the State of Florida for purposes of immunity under the Eleventh Amendment, "waived immunity by failing to plead it as an affirmative defense in its answer." *Id.* Florida, like Alabama, has expressly retained its immunity from suit in federal court. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). And, in *Shedrick*, Judge Rosenbaum concluded that plaintiff's waiver argument was unavailing for reasons that could apply, even more convincingly, to any waiver argument made in this matter. *See* 941 F. Supp. 2d at 1359.

First, any "failure to plead Eleventh Amendment immunity[—here, initially, in litigation parallel to this litigation—]cannot plausibly be held to be a clear declaration of, or to even raise an overwhelming implication of, waiver, particularly in light of [a state's] express retention of Eleventh Amendment immunity." *Id.* (citing *Edelman*, 415 U.S. at 673 ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'")); *see also Ross v. Colorado Dep't of Transp.*, Civil No. 11–cv–02603–REB–KMT, 2012 WL 5975086, at *6 n.10 (D. Colo. Nov. 14, 2012) (Eleventh Amendment immunity "cannot be waived by merely appearing in and litigating in a case 'absent some

The relatively straightforward framework to determine whether official-capacity claims against the Governor of Alabama should be dismissed in a lawsuit challenging the constitutionality of state law has been recently addressed by the Middle District:

> Governor Bentley claims that he is entitled to dismissal from suit based on grounds of sovereign and Eleventh Amendment immunity. To join Governor Bentley to this suit, Plaintiffs must show that he is "responsible for the challenged action" of enforcing or implementing the [act at issue]. *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988). Governor Bentley must, "by virtue of his office, have some connection with" the enforcement of the allegedly unconstitutional [act]. *Id.* (quoting *Young*, 209 U.S. at 157 (quotation marks and alterations omitted)). "Whether this connection arises out of general law, or is specially created by the act itself, is not material so long as it exists." *Id.* at 1016 (quoting *Young*, 209 U.S. at 157). But Governor Bentley's connection to the [act] cannot be "too attenuated to establish that he is responsible for" its implementation. *See Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003).
>
> In *Women's Emergency Network*, the Eleventh Circuit rejected the plaintiffs' argument that the Governor of Florida was a proper defendant because he was ultimately responsible for the Department of Highway Safety and Motor Vehicles, the state agency charged by the challenged statute with issuing specialty license plates. *Id.* at 949.

---

extraordinarily effective waiver.'" (quoting *Richins v. Industrial Constr., Inc.*, 502 F.2d 1051, 1056 (10th Cir. 1974)); *id.* (the routine defense of a matter in federal court "is not a case in which the state 'becomes the actor and files a claim against the fund, [and thus] waives any immunity it otherwise might have had respecting the adjudication of the claims'" (quoting *Gardner v. New Jersey*, 329 U.S. 565, 574 (1947))); *McGinty v. New York*, 251 F.3d 84, 93 (2d Cir. 2001) (Eleventh Amendment immunity not waived were "[n]o intervention occurred, no claims were asserted by the state defendants, and no resolution of issues other than those presented by plaintiffs' complaints had to be resolved" (distinguishing *Clark v. Barnard*, 108 U.S. 436 (1883))).

Eleventh Amendment immunity, which "deprives federal courts of any jurisdiction to entertain such claims," moreover, "may be raised at ***any*** point in a proceeding." *Shedrick*, 941 F. Supp. 2d at 1359 (quoting *Pennhurst*, 465 U.S. at 99 n.8) (citing *Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005) ("Eleventh Amendment jurisdictional questions can be raised for the first time on appeal.")) (emphasis added); *accord McGinty*, 251 F.3d at 94 (collecting cases).

The court explained that "[w]here the enforcement of a statute is the responsibility of parties other than the governor[,] . . . the governor's general executive power is insufficient to confer jurisdiction." *Id.* at 949-50.

*C.M. ex rel. Marshall v. Bentley*, --- F. Supp. 2d ----, 2014 WL 1378432, at *13-14 (M.D. Ala. Apr. 8, 2014) (finding the Governor's statutory responsibility to prepare "the State's general and education budgets each year" to be "too attenuated a connection to make him a proper defendant" in a lawsuit claiming the Alabama Accountability Act of 2013 ("the AAA") violated the Fourteenth Amendment-guaranteed equal protection rights of certain students' (those located in an area of the State with few or no nearby nonfailing school options and no financial resources with which to access nonfailing schools). "To conclude otherwise would authorize a plaintiff to challenge any state statute involving the appropriation of state funds merely by naming the governor as a defendant." (citing *Women's Emergency Network*, 323 F.3d at 949 (in turn citing *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276-77 (N.D. Fla. 2000) ("[G]eneral authority, standing alone, is insufficient to make [the Governor of the State] the proper party whenever a plaintiff seeks to challenge the constitutionality of a law." (collecting cases))))) (alteration to original).[7]

---

[7] *See Harris v. McDonnell*, --- F. Supp. 2d ----, 2013 WL 6835145, at *6 (W.D. Va. Dec. 23, 2013) ("[T]he court concludes that the Virginia Governor's general supervisory authority over the Commonwealth's executive branch does not constitute a special relation to the challenged same-sex marriage ban. The Virginia Governor has insufficient proximity to and responsibility for Virginia's marriage laws, and plaintiffs have not shown any involvement by the Governor in the enforcement of these laws."); *Bishop v. Oklahoma*, 333 Fed. App'x 361, 365 (10th Cir. June 5, 2009) ("[T]he Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce. . . . The Couples claim they desire to be married but are prevented from doing so, or they are married but the marriage is not recognized in Oklahoma. These claims are simply not connected to the duties of the Attorney General or the Governor. Marriage licenses are issued, fees collected, and the

### III. Analysis

As Governor Bentley argues, he neither has "enforcement responsibilities with respect to Alabama's marital and domestic laws" (Doc. 17 at 4 (citing ALA. CODE § 30-1-1 et seq.) nor "enforcement responsibilities with respect to the adoption statute that forms this basis of this lawsuit" (*id.* (citing ALA. CODE § 26-10A-27)). Indeed, Plaintiffs mention the Governor only once in their complaint. (*See* Doc. 1, ¶ 7.) As that singular substantive reference—that " . . . Robert Bentley is the Governor of the State of Alabama, and is vested with the powers of the office of the highest executive branch state official. Governor Bentley maintains, exercises and enforces his authority, among other ways, in connection with the Sanctity Laws." (*id.*)—makes clear, the sole basis for naming the Governor a defendant here is his

---

licenses recorded by the district court clerks." (citations omitted)); *but see Kitchen v. Herbert*, --- F.3d ----, 2014 WL 2868044, at *5 (10th Cir. June 25, 2014) (distinguishing Bishop on facts specific to how marriage licenses are issued in Utah, where the Governor and Attorney General have statutory authority over county clerks who issue marriage licenses); *see also Peter B. v. Sanford*, Civil Action No. 6:10–767–RBH–BHH, 2010 WL 5684397, at *3 (D.S.C. Dec. 6, 2010) ("*Ex parte Young* requires a 'special relation' between the state official sued and the challenged statute, and '[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.'" (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (in turn quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)))); *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1131-32 (C.D. Cal. 2012) ("It is well established that 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" (quoting *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (other citations omitted))); *compare id.*, *with American Fed. of State, Cnty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 278 F.R.D. 664, 670-71 (S.D. Fla. 2011) (distinguishing *Women's Emergency Network*, and holding Governor of Florida properly named in his official capacity, where "the Governor issued the challenged [executive order]"), *and Dyke v. Dudek*, No. 4:11cv116/RS–WCS, 2011 WL 4370608, at *1-2 (N.D. Fla. Sept. 19, 2011) ("Because [the executive order] is no longer in effect, the Governor's responsibility over the agencies in question amounts to general executive power which is not sufficient to permit jurisdiction over him. The Governor's other actions including investigating and reviewing rules are part of his normal functions of administration. The Governor is entitled to Eleventh Amendment immunity.").

"general authority" over the executive branch, which, "standing alone[ ] is insufficient to make [him a] proper party" to a lawsuit challenging the constitutionality of the Marriage Sanctity Laws. *Harris*, 106 F. Supp. 2d at 1276. Plaintiffs have failed to allege, specifically, the Governor Bentley is "'responsible for the challenged action' of enforcing or implementing the [Marriage Sanctity Laws]." *C.M. ex rel. Marshall*, 2014 WL 1378432, at *13 (quoting *Luckey*, 860 F.2d at 1015). And the only "connection" they do allege, his general executive power, is "too attenuated to establish that he is responsible for" implementation of the challenged laws. *Women's Emergency Network*, 323 F.3d at 949. Thus, pursuant to the traditional analysis associated with this issue, Plaintiffs' official-capacity claim against Governor Bentley is due to be dismissed.[8]

But Plaintiffs have not chosen to defend their choice to keep Governor Bentley, in his official capacity, in this litigation by arguing he has a special relationship with, and/or a specific duty to enforce, the Marriage Sanctity Laws (the traditional analysis). Plaintiffs instead argue, pursuant to Rule 19, that (1) "Governor Bentley's presence in this case is required . . . because complete relief cannot be provided to [them] without his presence"; and (2) "Governor Bentley's absence would leave the Plaintiffs at a substantial risk of inconsistent and multiple

---

[8] *Cf. Peter B.*, 2010 WL 5684397, at *3 n.3 ("In order to survive a motion to dismiss on an *Ex parte Young* claim, it is typically sufficient that the plaintiff has alleged facts that, if proven, would violate federal law and that the requested relief is prospective. The Court, however, may look to the 'special relation' requirement to dismiss a claim where 'the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated.'" (quoting *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008)) (other citations omitted)).

10

outcomes in this litigation." (Doc. 27 at 2.) As stated, Plaintiffs' fear is "were Governor Bentley allowed out of this case as a party Defendant, he could file an appeal in this action and/or file other litigation to impede the Plaintiffs' efforts to secure the relief sought." (*Id.* at 2-3.) The basis for this concern, Plaintiffs state, is (1) the power of the Governor of Alabama, derived from the State Constitution and provided in numerous statutes, to bring suit in the name of the State and intervene in litigation involving the State and its agencies; and (2) that the Attorney General of Alabama cannot "interfere with or [ ] direct and control litigation being pursued by officers who are acting pursuant to directions from the governor . . . ." (*See id.* at 3-4 (chiefly relying on *Riley v. Cornerstone Cmty. Outreach, Inc.*, 57 So. 3d 704 (Ala. 2010)).)[9] Thus, Plaintiffs conclude,

---

[9] There, Justice Murdoch, writing for the Supreme Court, first reached "two preliminary conclusions."

> First, if our constitution's grant of "supreme executive authority" to the governor and its charge that the governor "take care that the laws be faithfully executed" mean anything in relation to a matter for which another constitutional officer is also given responsibility, they at least mean as follows: when the governor determines that, whether due to inaction or inadequate action by the other official, it is necessary for him to act lest the law go unenforced, he may act.
>
> Second, the aforesaid authority to act derives from the constitution itself, not from any statutory grant of authority by the legislature. That is, it is authority that exists even in the absence of a specific grant of authority by the legislature.

*Id.* at 722 (footnote omitted). The second preliminary conclusion notwithstanding, the Supreme Court next noted, "Numerous statutory provisions and decisions of this Court [also] authorize the governor to bring suit in the name of the State." *Id.* at 723; *compare id.* at 726 ("Moreover, all statutes concerning the rights and powers of the governor must be read in the context provided by §§ 113 and 120 of the constitution. Under the constitution, it is the governor who is the 'chief magistrate' with 'the supreme executive power' to 'take care that the laws be faithfully executed.' The legislature has expressly provided that the governor can direct a district attorney or a supernumerary district attorney to represent the

11

> Governor Bentley is a necessary and proper party to this lawsuit because complete relief cannot be provided to the Plaintiffs without his presence. Were Governor Bentley to not like the outcome before this Court, there is nothing stopping him from filing an appeal in this matter and using any judicial means that he deems appropriate. This could certainly lead to multiple outcomes for the Plaintiffs.

(*Id.* at 4.)

Plaintiffs invoke Rule 19(a)—19(a)(1)(A) (complete relief) and 19(a)(1)(B)(ii) (substantial risk of multiple or otherwise inconsistent obligations[10])—to argue that a party currently joined should not be dismissed. In the usual course, however, Rule 19(a) is not invoked to show that a party should not be dismissed, but is merely the first step in determining whether an action should be dismissed, pursuant to Rule 12(b)(7), for failure to join a party under Rule 19. *See Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)

---

interests of the State in the trial court and in this Court, as applicable." (citation omitted)), *with id.* at 736 ("[W]e conclude that the statutes discussing the powers and duties of the attorney general do not authorize the attorney general to interfere with or to direct and control litigation being pursued by officers who are acting pursuant to directions from the governor . . . .").

[10]    Plaintiffs do not actually argue that the Governor's absence will subject them to multiple or otherwise inconsistent **obligations**, but that his absence could lead to "a substantial risk of inconsistent and multiple **outcomes**." (Doc. 27 at 2, 4 (emphasis added)). But neither multiple litigation nor inconsistent outcomes, as a result of multiple litigation, is what Rule 19(a)(1)(B)(ii) guards against. *See, e.g., Wheeler Peak, LLC v. L.C.I.2, Inc.*, No. CIV 07–1117 JB/WDS, 2009 WL 2982817, at *12 (D.N.M. Aug. 15, 2009) ("The definition of inconsistent obligations is [ ] fairly uniform, among both courts and commentators. Rule 19(a)(1)(B)(ii) does not attempt to stop different courts from rendering inconsistent judgments, but rather is aimed at ensuring that parties are not subject to conflicting commands from different courts. . . ."); *New Hampshire Ins. Co. v. Cincinnati Ins. Co.*, Civil Action No. 14–0099–CG–N, 2014 WL 3428911, at *6 (S.D. Ala. July 15, 2014) ("Inconsistent obligations only come into play when it is shown that two or more parties in two or more suits (including potential suits) seek the same property or seek a judicial determination as to the same issue. In other words, an absent party with interests that compete or overlap with interests being adjudicated by a court is what gives rise to an inconsistent obligation as contemplated in Rule 19(a)(1)(B)(ii)." (citations omitted)).

("[T]he court must [first] ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."); *accord Focus on the Family v. Pinellas Suncoat Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003). But even if the Court accepts Plaintiffs' position that Governor Bentley is a party required to be joined if feasible under Rule 19(a) (and apply such logic to mean that, since he is already a party, the official-capacity claim should not be dismissed), Plaintiffs' argument falls apart because Rule 19 cannot abrogate the Governor's right to Eleventh Amendment immunity. *See, e.g., Diaz*, 2013 WL 5603944, at *4 ("Eleventh Amendment immunity . . . goes directly to constitutional limitations on the Article III power of the court.").

Indeed, in cases in which Rule 19 and Eleventh Amendment immunity have intersected, courts have held that sovereign immunity has significant, if not controlling, weight. The sovereign immunity of the required, but (in those cases) absent party did not, however, factor into whether that party should be joined under Rule 19(a)—because immunity made joinder not feasible[11]—but instead was

---

[11] *See Cyanotech Corp. v. U.S. Nutraceuticals, LLC*, Civil No. 12–00352 JMS–RLP, 2013 WL 504862, at *8 (D. Haw. Feb. 7, 2013) ("[A]t this first step, the court easily concludes that the University is a party who should be joined. . . . The second step addresses whether joinder is 'feasible.' ***Here, because the court has already dismissed the University under Eleventh Amendment principles, joinder of the University necessarily is not feasible.*** The University has not consented to suit in this jurisdiction, and the court cannot order its joinder given its Eleventh Amendment immunity." (citations omitted; emphasis added)).

13

a factor in determining whether "the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). *See Seneca Nation of Indians v. New York*, 383 F.3d 45, 48-49 (2d Cir. 2004) (affirming the Magistrate Judge's determination that "the State was indispensable under Rule 19(b)" and, as such, dismissal was required for, among other reasons, "that [while] the Senecas would be left without 'an adequate remedy if the Thruway easement claim is dismissed for nonjoinder,' . . . that '[ ] factor is outweighed by the "paramount importance" to be accorded to the State's immunity from suit.' We find no abuse of discretion in this analysis, particularly in light of the significance sovereign immunity plays in weighing the Rule 19(b) factors." (citations omitted)); *see also Diaz*, 2013 WL 5603944, at *4, *7-8 (concerning the University of Alabama, a required, but absent party with sovereign immunity, and discussing the United States Supreme Court's decision in *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008): "The Court's discussion of the weight sovereign immunity should be given under the Rule 19(b) standard is instructive. . . . The Court stressed that the claims of the Philippines and the Commission were not frivolous and that proceeding with the interpleader in their absence clearly risked injury to their interests in the interpleaded assets. Where sovereign immunity is the bar to joining such required parties, 'dismissal of the action must be ordered.'").

Given Governor Bentley's immunity from suit here, as explained above, the undersigned concludes his joinder (now that it is clear he is due to be dismissed) is not feasible, pursuant to Rule 19(b). This finding clearly ends any consideration of

14

Plaintiffs' speculative opposition to Governor Bentley's dismissal from this action—which appears to be that, at some point in the future, the interests of the Governor and Attorney General Strange, now clearly aligned in defense of the Marriage Sanctity Laws, will somehow diverge, necessitating that the Governor intervene in this case to defend the Sanctity Laws.[12]

## IV. Conclusion

For the reasons explained above, it is **RECOMMENDED** that Commissioner Buckner's motion to dismiss (Doc. 14) and Governor Bentley and Attorney General Strange's motion to dismiss (Doc. 17) be **GRANTED**; and that Judge Davis's motion to dismiss (Doc. 10) be **DENIED as MOOT**. Accordingly, it is **RECOMMENDED** that this case proceed solely against Attorney General Strange in his official capacity.

## V. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is

---

[12] Plaintiffs merely speculate that the Attorney General could choose, at some point in the future, not to defend the challenged laws. *Contra cf. Federal Nat'l Mortg. Ass'n v. Lefkowitz*, 383 F. Supp. 1294, 1297-98 & n.3 (S.D.N.Y. 1974) (denying the Governor's motion to dismiss at least in part because "the Attorney General['s] challeng[e to] court's jurisdiction . . . might well be prejudicial to the plaintiff).

15

made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 30th day of July, 2014.

                                                      */s/ Katherine P. Nelson*
                                                   **KATHERINE P. NELSON**
                                                   **UNITED STATES MAGISTRATE JUDGE**