IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARI D. SEARCY and KIMBERLY MCKEAND, individually and as parent and next friend of K.S., a minor,<br><br>    Plaintiffs,<br>vs.<br><br>LUTHER STRANGE, in his capacity as Attorney General for the State of Alabama,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 14-0208-CG-N<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANUM OPINION AND ORDER

This case challenges the constitutionality of the State of Alabama's "Alabama Sanctity of Marriage Amendment" and the "Alabama Marriage Protection Act." It is before the Court on cross motions for summary judgment (Docs. 21, 22, 47 & 48). For the reasons explained below, the Court finds the challenged laws to be unconstitutional on Equal Protection and Due Process Grounds.

**I. Facts**

This case is brought by a same-sex couple, Cari Searcy and Kimberly McKeand, who were legally married in California under that state's laws. The Plaintiffs want Searcy to be able to adopt McKeand's 8-year-old biological son, K.S., under a provision of Alabama's adoption code that allows a person to adopt her "spouse's child." ALA. CODE § 26-10A-27. Searcy filed a petition in the Probate Court of Mobile County seeking to adopt K.S. on December 29, 2011, but that petition was denied based on the "Alabama Sanctity of Marriage Amendment" and the "Alabama

Marriage Protection Act." (Doc. 22-6).  The Alabama Sanctity of Marriage Amendment to the Alabama Constitution provides the following:

> (a) This amendment shall be known and may be cited as the Sanctity of Marriage Amendment.
>
> (b) Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting this unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.
>
> (c) Marriage is a sacred covenant, solemnized between a man and a woman, which, when the legal capacity and consent of both parties is present, establishes their relationship as husband and wife, and which is recognized by the state as a civil contract.
>
> (d) No marriage license shall be issued in the State of Alabama to parties of the same sex.
>
> (e) The State of Alabama shall not recognize as valid any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction regardless of whether a marriage license was issued.
>
> (f) The State of Alabama shall not recognize as valid any common law marriage of parties of the same sex.
>
> (g) A union replicating marriage of or between persons of the same sex in the State of Alabama or in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state and shall not be recognized by this state as a marriage or other union replicating marriage.

ALA. CONST. ART. I, § 36.03 (2006).

The Alabama Marriage Protection Act provides:

> (a) This section shall be known and may be cited as the "Alabama Marriage Protection Act."
>
> (b) Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting the unique relationship in

> order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.
>
> (c) Marriage is a sacred covenant, solemnized between a man and a woman, which, when the legal capacity and consent of both parties is present, establishes their relationship as husband and wife, and which is recognized by the state as a civil contract.
>
> (d) No marriage license shall be issued in the State of Alabama to parties of the same sex.
>
> (e) The State of Alabama shall not recognize as valid any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction regardless of whether a marriage license was issued.

ALA. CODE § 30-1-19. Because Alabama does not recognize Plaintiffs' marriage, Searcy does not qualify as a "spouse" for adoption purposes. Searcy appealed the denial of her adoption petition and the Alabama Court of Civil Appeals affirmed the decision of the probate court. (Doc. 22-7).

## II. Discussion

There is no dispute that the court has jurisdiction over the issues raised herein, which are clearly constitutional federal claims. This court has jurisdiction over constitutional challenges to state laws because such challenges are federal questions. 28 U.S.C. § 1331.

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P 56(a). Because the parties do not dispute the pertinent facts or that they present purely legal issues, the court turns to the merits.

Plaintiffs contend that the Sanctity of Marriage Amendment and the Alabama Marriage Protection Act violate the Constitution's Full Faith and Credit clause and

the Equal Protection and Due Process clauses of the Fourteenth Amendment. Alabama's Attorney General, Luther Strange, contends that Baker v. Nelson, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972), is controlling in this case.  In Baker, the United States Supreme Court summarily dismissed "for want of substantial federal question" an appeal from the Minnesota Supreme Court, which upheld a ban on same-sex marriage. Baker v. Nelson, 291 Minn. 310, 191 N.W.2d 185 (Minn.1971), appeal dismissed, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972).  The Minnesota Supreme Court held that a state statute defining marriage as a union between persons of the opposite sex did not violate the First, Eighth, Ninth, or Fourteenth Amendments to the United States Constitution. Baker, 191 N.W.2d at 185–86. However, Supreme Court decisions since Baker reflect significant "doctrinal developments" concerning the constitutionality of prohibiting same-sex relationships. See Kitchen v. Herbert, 755 F.3d 1193, 1204–05 (10th Cir. 2014).  As the Tenth Circuit noted in Kitchen, "[t]wo landmark decisions by the Supreme Court", Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and United States v. Windsor, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013), "have undermined the notion that the question presented in Baker is insubstantial." 755 F.3d at 1205.  Lawrence held that the government could not lawfully "demean [homosexuals'] existence or control their destiny by making their private sexual conduct a crime." Lawrence, 539 U.S. at 574, 123 S.Ct. 2472.  In Windsor, the Supreme Court struck down the federal definition of marriage as being between a man and a woman because, when applied to legally married same-sex couples, it "demean[ed] the couple, whose moral and sexual choices the Constitution protects."

4

Windsor, 133 S.Ct. at 2694.  In doing so, the Supreme Court affirmed the decision of the United States Court of Appeals for the Second Circuit, which expressly held that Baker did not foreclose review of the federal marriage definition. Windsor v. United States, 699 F.3d 169, 178–80 (2d Cir.2012) ("Even if Baker might have had resonance ... in 1971, it does not today.").

Although the Eleventh Circuit Court of Appeals has not yet determined the issue, several federal courts of appeals that have considered Baker's impact in the wake of Lawrence and Windsor have concluded that Baker does not bar a federal court from considering the constitutionality of a state's ban on same-sex marriage. See, e.g., Bishop v. Smith, 760 F.3d 1070 (10th Cir. 2014); Kitchen, 755 F.3d 1193 (10th Cir.2014); Latta v. Otter, 771 F.3d 456 (9th Cir. 2014); Baskin v. Bogan, 766 F.3d 648 (7th Cir. 2014); Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014).  Numerous lower federal courts also have questioned whether Baker serves as binding precedent following the Supreme Court's decision in Windsor.  This Court has the benefit of reviewing the decisions of all of these other courts.  "[A] significant majority of courts have found that Baker is no longer controlling in light of the doctrinal developments of the last 40 years." Jernigan v. Crane, 2014 WL 6685391, *13 (E.D. Ark. 2014) (citing Rosenbrahn v. Daugaard, 2014 WL 6386903, at *6–7 n. 5 (D.S.D. Nov.14, 2014) (collecting cases that have called Baker into doubt)).  The Court notes that the Sixth Circuit recently concluded that Baker is still binding precedent in DeBoer v. Snyder, 772 F.3d 388 (6th Cir. 2014), but finds the reasoning of the Fourth, Seventh, Ninth, and Tenth Circuits to be more persuasive on the question and concludes that

Baker does not preclude consideration of the questions presented herein.[1]  Thus, the Court first addresses the merits of Plaintiffs' Due Process and Equal Protection claims, as those claims provide the most appropriate analytical framework.  And if equal protection analysis decides this case, there is no need to address the Full Faith and Credit claim.

Rational basis review applies to an equal protection analysis unless Alabama's laws affect a suspect class of individuals or significantly interfere with a fundamental right.  Zablocki v. Redhail, 434 U.S. 374, 388, 98S.Ct. 673, 54 L.Ed.2d 618 (1978).  Although a strong argument can be made that classification based on sexual orientation is suspect, Eleventh Circuit precedence holds that such classification is not suspect.  Lofton v. Secretary of Dep't. of Children and Family Services, 358 F.3d 804, 818 (11th Cir. 2004)/  The post-Windsor landscape may ultimately change the view expressed in Lofton, however no clear majority of Justices in Windsor stated that sexual orientation was a suspect category.

Laws that implicate fundamental rights are subject to strict scrutiny and will survive constitutional analysis only if narrowly tailored to a compelling government interest.  Reno v. Flores, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).  Careful review of the parties' briefs and the substantial case law on the subject persuades the Court that the institution of marriage itself is a fundamental right

---

[1] This court also notes that the Supreme Court has granted certiorari in the DeBoer case, Bourke v. Bashear , __ S.Ct.__,  2015 WL 213651 (U.S. January 16, 2015), limiting review to these two questions: 1) Does the 14th Amendment require a state to license a marriage between two people of the same sex? and 2) Does the 14th Amendment require a state to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-state?  The questions raised in this lawsuit will thus be definitively decided by the end of the current Supreme Court term, regardless of today's holding by this court.

protected by the Constitution, and that the State must therefore convince the Court that its laws restricting the fundamental right to marry serve a compelling state interest.

"The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men" and women. Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).  Numerous cases have recognized marriage as a fundamental right, describing it as a right of liberty, Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), of privacy, Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and of association, M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). "These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment." Planned Parenthood of SE Pa. v. Casey, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

"Under both the Due Process and Equal Protection Clauses, interference with a fundamental right warrants the application of strict scrutiny." Bostic v. Schaefer, 760 F.3d 352, 375(4th Cir. 2014).  Strict scrutiny "entail[s] a most searching examination" and requires "the most exact connection between justification and classification." Gratz v. Bollinger, 539 U.S. 244, 270, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (internal quotations omitted). Under this standard, the defendant "cannot rest upon a generalized assertion as to the classification's relevance to its goals." Richmond v. J.A. Croson Co., 488 U.S. 469, 500, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).  "The purpose of the narrow tailoring requirement is to ensure that the

means chosen fit the compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate." Grutter v. Bollinger, 539 U.S. 306, 333, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003).

Defendant contends that Alabama has a legitimate interest in protecting the ties between children and their biological parents and other biological kin.[2] However, the Court finds that the laws in question are not narrowly tailored to fulfill the reported interest. The Attorney General does not explain how allowing or recognizing same-sex marriage between two consenting adults will prevent heterosexual parents or other biological kin from caring for their biological children. He proffers no justification for why it is that the provisions in question single out same-sex couples and prohibit them, and them alone, from marrying in order to meet that goal. Alabama does not exclude from marriage any other couples who are either unwilling or unable to biologically procreate. There is no law prohibiting infertile couples, elderly couples, or couples who do not wish to procreate from marrying. Nor does the state prohibit recognition of marriages between such couples from other states. The Attorney General fails to demonstrate any rational, much less

---

[2] Although Defendant seems to hang his hat on the biological parent-child bond argument, Defendant hints that this is one of many state interests justifying the laws in question and some of his arguments could be construed to assert additional state interests that have commonly been proffered in similar cases. The court finds that these other interests also do not constitute compelling state interests. See Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014) (finding that the following interests neither individually nor collectively constitute a compelling state interest for recognizing same-sex marriages: (1) the State's federalism-based interest in maintaining control over the definition of marriage within its borders, (2) the history and tradition of opposite-sex marriage, (3) protecting the institution of marriage, (4) encouraging responsible procreation, and (5) promoting the optimal childrearing environment.).

compelling, link between its prohibition and non-recognition of same-sex marriage and its goal of having more children raised in the biological family structure the state wishes to promote.  There has been no evidence presented that these marriage laws have any effect on the choices of couples to have or raise children, whether they are same-sex couples or opposite-sex couples.  In sum, the laws in question are an irrational way of promoting biological relationships in Alabama.  Kitchen, 755 F.3d at 1222 ("As between non-procreative opposite-sex couples and same-sex couples, we can discern no meaningful distinction with respect to appellants' interest in fostering biological reproduction within marriages.").

If anything, Alabama's prohibition of same-sex marriage detracts from its goal of promoting optimal environments for children.  Those children currently being raised by same-sex parents in Alabama are just as worthy of protection and recognition by the State as are the children being raised by opposite-sex parents.  Yet Alabama's Sanctity laws harms the children of same-sex couples for the same reasons that the Supreme Court found that the Defense of Marriage Act harmed the children of same-sex couples.  Such a law "humiliates [ ] thousands of children now being raised by same-sex couples.  The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives."  Windsor, 133 S.Ct. at 2694.  Alabama's prohibition and non-recognition of same-sex marriage "also brings financial harm to children of same-sex couples." id. at 2695, because it denies the families of these children a panoply of benefits that the State and the federal government offer to families who are legally wed.  Additionally, these laws

further injures those children of all couples who are themselves gay or lesbian, and who will grow up knowing that Alabama does not believe they are as capable of creating a family as their heterosexual friends.

For all of these reasons, the court finds that Alabama's marriage laws violate the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### III. Conclusion

For the reasons stated above, Plaintiffs' motion for summary judgment (Doc. 21), is **GRANTED** and Defendant's motion for summary judgment (Docs. 47), is **DENIED**.

**IT IS FURTHER ORDERED** that ALA. CONST. ART. I, § 36.03 (2006) and ALA. CODE 1975 § 30-1-19 are unconstitutional because they violate they Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

**IT IS FURTHER ORDERED** that the defendant is enjoined from enforcing those laws.

**DONE** and **ORDERED** this 23rd day of January, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE